IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DURECO K. BROWN,
      Plaintiff,

vs.                                    Case No.: 3:16cv303/MCR/EMT

NURSE B.C. SMITH, et al.,
      Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Dureco K. Brown ("Brown"), proceeding pro se and in forma pauperis, commenced this action by filing a civil rights complaint, under 42 U.S.C. § 1983 (ECF No. 1).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). After careful consideration of the issues raised by Brown, it is the opinion of the undersigned that this case should be dismissed.

I.     BROWN'S ALLEGATIONS

Brown is an inmate of the Florida Department of Corrections ("FDOC"), housed at Union Correctional Institution.  He names the following persons as Defendants:  (1) B.C. Smith, a Nurse at Blackwater River Correctional Facility; (2)

Scott J. Seagle, an attorney with the law firm of Coppins, Monroe, Adkins, &
Dincman, P.A.; and (3) Gwendolyn P. Adkins, also an attorney in the Coppins law
firm (ECF No. 1 at 1–2).  Brown alleges that on August 4, 2015, Nurse Smith
disclosed, without his consent, his confidential medical records to Attorneys Seagle
and Adkins, relating to treatment he received at Blackwater C.F. from January 26,
2015 to March 30, 2015 (*id.* at 5, 7).  Brown alleges Nurse Smith disclosed the records
in retaliation for Brown's filing a lawsuit against Nurse Smith's co-worker, Nurse M.
White (*id.*).  Brown alleges he filed the lawsuit against Nurse White in this court,
Brown v. White, Case No. 3:15cv178/LAC/CJK, claiming that Nurse White violated
his Eighth Amendment rights by failing to provide a "low bunk" pass when Brown
sought medical treatment for alleged back pain (*id.*).  Brown alleges Attorneys Seagle
and Adkins represented Nurse White in Case No. 3:15cv178/LAC/CJK, and submitted
his confidential medical records to the court in support of a motion for summary
judgment (*id.*).  Brown alleges Defendants' non-consensual disclosure of his medical
records to the court in Case No. 3:15cv178/LAC/CJK prevented him from litigating
his non-frivolous Eighth Amendment claim, because the records were submitted so
early in the litigation that he did not have an opportunity to engage in discovery (*id.*).
Brown alleges the court granted Nurse White's motion for summary judgment (*id.*).
Indeed, the docket shows that the court granted Nurse White's motion for summary

judgment and entered judgment in her favor.  *See* Brown v. White, Case No.
3:15cv178/LAC/CJK, Order Adopting Report and Recommendation, Feb. 20, 2016,
ECF No. 32; Clerk's Judgment, Feb. 22, 2016, ECF No. 33.

Brown claims that Defendants' non-consensual disclosure of his medical
records in Case No. 3:15cv178/LAC/CJK denied him access to the courts, in violation
of the First Amendment (ECF No. 1 at 6, 8).  He also claims that their conduct
violated his due process rights guaranteed by the Fifth and Fourteenth Amendments
(*id.*).  Brown seeks compensatory, punitive, and nominal damages (*id.*).

## II.    ANALYSIS

To survive dismissal at the screening phase, a complaint must contain sufficient
factual matter, accepted as true, to state a claim to relief that is plausible on its face.
Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)
(internal quotation marks and citation omitted).  The plausibility standard is met only
where the facts alleged enable "the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  *Id.*  The complaint's allegations must
establish "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*
Mere "labels and conclusions or a formulaic recitation of the elements of a cause of
action will not do," and a plaintiff cannot rely on "naked assertions devoid of further
factual enhancement."  *Id.* (internal quotation marks and alteration omitted); *see also*

Franklin v. Curry, 738 F.3d 1246, 1251 (11th Cir. 2013).  Stated succinctly, pleadings that are no more than conclusions, are not entitled to the assumption of truth.  *See* Iqbal, 556 U.S. at 679.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  *Id.*  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  *Id.*

    A.    <u>Nurse Smith</u>

        1.    <u>First Amendment Claim</u>

It is settled law that interference with an inmate's access to the courts is a violation of a First Amendment right actionable under section 1983.  *See* <u>Lewis v. Casey</u>, 518 U.S. 343, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996); <u>Bounds v. Smith</u>, 430 U.S. 817, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977); <u>Chandler v. Baird</u>, 926 F.2d 1057 (11th Cir. 1991).  However, as established in <u>Lewis</u>, to successfully allege a constitutional violation based upon a denial of access to courts, Brown must specifically show how he was actually harmed or prejudiced with respect to the litigation in which he was involved.  518 U.S. at 349.  The type of prejudice that is deficient in the constitutional sense is that which hinders the inmate's ability to actually proceed with his claim; there is no constitutional mandate "to suggest that the State must enable the prisoner to discover grievances, and to litigate effectively once

in court." *Id.* at 354.  Brown must allege actual injury "such as a denial or dismissal" and show that presentation of his case was impeded because of the defendant's actions.  Wilson v. Blankenship, 163 F.3d 1284, 1290–91 (11th Cir. 1998) (citing Lewis); *see also* Bass v. Singletary, 143 F.3d 1442, 1445–46 (11th Cir. 1998).  So long as Brown was able to litigate his claim, he cannot demonstrate that he was unconstitutionally denied access to the courts.  Wilson, 163 F.3d at 1291.  Moreover, Brown cannot show an injury unless he shows that the case he was unable to pursue had arguable merit.  Lewis, 581 U.S. at 353 n.3; Wilson, *supra*.

Here, Brown cannot show that the disclosure of a limited portion of his medical records prevented him from litigating Case No. 3:15cv178/LAC/CJK, or otherwise caused the dismissal of his Eighth Amendment claim.  Brown himself cited the medical records in support of his opposition to Nurse White's motion for summary judgment.  *See* Brown v. White, Case No. 3:15cv178/LAC/CJK, Response, Aug. 21, 2015, ECF No. 26.  Further, there is no dispute that Brown placed his medical condition at issue in Case No. 3:15cv178/LAC/CJK.  If Brown had refused to release his relevant medical records to Attorneys Seagle and Adkins, counsel could have filed a motion requesting that the court compel Brown to release them, and the court would have properly granted counsel's motion.

Additionally, although Brown argues that disclosure of his medical records early in the litigation deprived him of the opportunity to engage in discovery, and thus impeded his ability to litigate the case, Brown could have, pursuant to Rule 56 of the Federal Rules of Civil Procedure, requested that the court defer consideration of Nurse White's motion for summary judgment until he had an opportunity to conduct discovery.  *See* Fed. R. Civ. P. 56(d).  Further, Brown has not identified any evidence that he could have presented to the court, had he been able to conduct discovery, which would have changed the court's determination that he failed to state an Eighth Amendment claim.  *See* <u>Brown v. White</u>, Case No. 3:15cv178/LAC/CJK, Report and Recommendation, Jan. 26, 2016, ECF No. 29, Order Adopting Report and Recommendation, Feb. 20, 2016, ECF No. 32.

Brown cannot show that presentation of his Eighth Amendment claims was impeded by  the disclosure of his medical records, or that his claim was meritorious. Therefore, he failed to state a First Amendment violation with respect to the disclosure of his medical records.

To the extent Brown is asserting a First Amendment retaliation claim against Nurse Smith, his allegations fail to state a plausible claim for relief.    It is well established that the First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech. *See* <u>Crawford-El v Britton</u>, 523 U.S.

574, 588 n.10, 592–93, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998); Farrow v. West,
320 F.3d 1235, 1248 (11th Cir. 2003) (citations omitted); Adams v. James, 784 F.2d
1077, 1080 (11th Cir. 1986) (citation omitted); *see also* Mitchell v. Farcass, 112 F.3d
1483, 1490 (11th Cir. 1997); Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986).
To prevail on a claim of retaliation, the inmate must establish these elements:  (1) his
speech was constitutionally protected; (2) the defendant's retaliatory conduct
adversely affected the protected speech; and (3) there is a causal relationship between
the retaliatory action and the protected speech.  *See* Douglas v. Yates, 535 F.3d 1316,
1321 (11th Cir. 2008) (citing Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th
Cir. 2005)); Cummings v. Harrison, 695 F. Supp. 2d 1263, 1274–75 (N.D. Fla. 2010).

As to the second element, the Eleventh Circuit employs a purely objective
standard:   "A plaintiff suffers adverse action if the defendant's allegedly retaliatory
conduct would likely deter a person of ordinary firmness from the exercise of First
Amendment rights." Bennett, 423 F.3d at 1253.  In adopting this objective standard,
the Eleventh Circuit expressly rejected a subjective "actual chill" standard, that is, a
plaintiff suffers adverse action only if the retaliatory conduct actually chilled the
exercise of his First Amendment rights.  *Id.* at 1250–54.

The third element, whether there was a causal connection between the
retaliatory acts and the adverse effect on the speech, "asks whether the defendants

were subjectively motivated to discipline because [the prisoner] complained of the conditions of his confinement." Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008). Most courts, including the Eleventh Circuit, resolve the third element, the subjective motivation issue, under the burden-shifting formula of Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977). See Hartman v. Moore, 547 U.S. 250, 260, 126 S. Ct. 1695, 64 L. Ed. 2d 441 (2006) (citing Mt. Healthy, 429 U.S. at 285–87; Crawford-E;, 523 U.S. at 593); Smith, 532 F.3d at 1278. Initially, the plaintiff must plead and provide sufficient evidence of the retaliatory motive and the adverse action. See Hartman, 547 U.S. at 259–60.

In the instant case, Brown has failed to plead specific, nonconclusory factual allegations showing that the Nurse Smith's disclosure of the medical records was motivated by retaliation. The mere fact that Smith was Nurse White's co-worker is insufficient to plausibly suggest retaliatory intent. Furthermore, Nurse Smith's position as Director of Nursing, which included the responsibility of maintaining institutional health care records (see Brown v. White, Case No. 3:15cv178/LAC/EMT, Aff. of Beebe Cannon-Smith, R.N., Aug. 5, 2015, ECF No. 21-1), was a legitimate reason for Brown to authenticate and disclose the records to Attorneys Seagle and Adkins for the purpose of defending the civil rights case against Nurse White.

Moreover, Nurse Smith's disclosing the records was not an "adverse action" for First Amendment purposes.  The release of an inmate's medical records for submission to a court in a civil rights case brought by the inmate and concerning medical treatment that the inmate received, would not likely deter a person of ordinary firmness from filing a civil rights case.  Indeed, an inmate who brings such a lawsuit should expect that his relevant medical records will be submitted to the court during the course of such litigation.  Therefore, Brown's retaliation claim against Nurse Smith should be dismissed.

2.    Due Process Claims

In addition to his access-to-courts claims, Brown alleges that the non-consensual disclosure of his medical records violated his due process rights.  He contends the disclosure violated FDOC policies and procedures providing that an inmate's confidential health records may be released only upon the inmate's written authorization (ECF No. 1 at 5–8).  He also appears to argue that disclosure of his confidential records violated his right to privacy (*id.*).

To the extent Brown's due process claim is based upon a violation of his right to privacy, his allegations fail to state a plausible constitutional claim.  The United States Constitution does not expressly guarantee a right to privacy, but the Supreme Court has held that a right to privacy does exist within the liberty component of the

Fourteenth Amendment.  *See* Roe v. Wade, 410 U.S. 113, 152–53, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973).  To date, the Supreme Court has recognized two types of interests protected by the right to privacy.  First, the right to privacy guards an individual's interest in avoiding disclosure of certain personal matters. Second, it protects an individual's personal autonomy in making certain important decisions, such as those involving marriage, contraception, and procreation.  Whalen v. Roe, 429 U.S. 589, 598–99, 97 S. Ct. 869, 51 L. Ed. 2d 64 (1977); Carey v. Population Servs. Int'l, 431 U.S. 678, 684, 97 S. Ct. 2010, 52 L. Ed. 2d 675 (1977); Harris v. Thigpen, 941 F.2d 1495, 1513 n.26 (11th Cir. 1991).

As discussed *supra*, Brown placed his medical condition at issue in the lawsuit against Nurse White.  A reasonable person who files a lawsuit in which he places his medical condition at issue would not consider his relevant medical records private from disclosure to the other party or the court.  Therefore, the disclosure of Brown's relevant medical records in Case No. 3:15cv178/LAC/CJK did not violate Brown's constitutional right to privacy.  *See* Padgett v. Donald, 401 F.3d 1273, 1282 (11th Cir. 2005) ("The right to privacy protects matters that a reasonable person would consider private."); *see also* Sanchez v. McCray, 349 F. App'x 479, 483 (11th Cir. 2009) ("[T]he district court properly overruled [the plaintiff's] objection to the admission of his medical records. . . .  [The Plaintiff] put his medical status at issue, and thus his

medical records were admissible as evidence"); <u>Weaver v. Myers</u>, 170 So. 3d 873, 883 (Fla. 1st DCA 2015) ("It is well-established in Florida and across the country that any privacy rights that might attach to a claimant's medical information are waived once that information is placed at issue by filing a medical malpractice claim."); <u>Barker v. Barker</u>, 909 So. 2d 333, 337 (Fla. 2d DCA 2005).

To the extent Brown asserts a due process claim based solely upon the alleged failure to follow FDOC policies and procedures with respect to disclosing his medical records without his written authorization, his allegations fail to state a plausible due process claim. A long line of Supreme Court decisions hold that a violation of state administrative or procedural law does not, of itself, give rise to a due process claim. *See, e.g.*, <u>Sandin v. Conner</u>, 515 U.S. 472, 482, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995) (decrying the notion that a violation of state prison regulations provides a basis for a procedural due process claim because it "creates disincentives for States to codify prison management procedures"); <u>Olim v. Wakinekona</u>, 461 U.S. 238, 250–51, 103 S. Ct. 1741, 75 L. Ed. 2d 813 (1983) (explaining that "[p]rocess is not an end in itself" and holding that a state's creation of administrative procedures "does not create an independent substantive right" under the Due Process Clause); *cf.* <u>Snowden v. Hughes</u>, 321 U.S. 1, 11, 64 S. Ct. 397, 88 L. Ed. 497 (1944) ("Mere violation of a state statute does not infringe the federal Constitution."). States may, under certain

circumstances, create liberty interests which are protected by the Due Process Clause.

*See* Sandin, 515 U.S. 472, 483–84.  However, these interests are generally limited to

freedom from restraint which "imposes atypical and significant hardship on the inmate

in relation to the ordinary incidents of prison life." *Id.* at 484.  "[T]he touchstone of

the inquiry into the existence of a protected, state-created liberty interest in avoiding

restrictive conditions of confinement is not the language of the regulations regarding

those conditions but the nature of those conditions themselves 'in relation to the

ordinary incidents of prison life.'" *Id.*

Here, Brown did not have a constitutionally protected liberty interest, separate

and apart from the privacy interest discussed *supra*, in Defendants' complying with

FDOC policies regarding the disclosure of his medical records.  Therefore, any

alleged failure to follow FDOC policy with respect to the disclosure of such records

did not violate Brown's due process rights.

B.    Attorneys Seagle and Adkins

Section 1983 of Title 42 of the United States Code provides for the recovery of

monetary damages for an alleged violation of a right secured by the Constitution or

other federal laws; however, two essential elements must be present:  (1) the conduct

complained of was committed by a person acting under color of state law; and (2) this

conduct  deprived  a  person  of  rights,  privileges,  or  immunities  secured  by  the

Constitution or laws of the United States.  *See* <u>Parratt v. Taylor</u>, 451 U.S. 527, 535,

101 S. Ct. 1908, 68 L. Ed. 2d 420, 428 (1981), *overruled on other grounds*, <u>Daniels</u>

<u>v. Williams</u>, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); <u>Duke v. Cleland</u>,

5 F.3d 1399, 1403 (11th Cir. 1993) (citing <u>Parratt</u>).  A private party does not normally

act under color of state law and is therefore not subject to suit under section 1983.  *See*

<u>Dennis v. Sparks</u>, 449 U.S. 24, 27–29, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980);

<u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 152, 90 S. Ct. 1598, 26 L. Ed. 2d 142

(1970).

  "Only in rare circumstances can a private party be viewed as a 'state actor' for

section 1983 purposes."  <u>Harvey v. Harvey</u>, 949 F.2d 1127, 1130 (11th Cir. 1992).

Private parties may be viewed as state actors for section 1983 purposes if one of the

following three tests is met:  "(1) the State has coerced or at least significantly

encouraged the action alleged to violate the Constitution ('State compulsion test'); (2)

the private parties performed a public function that was traditionally the exclusive

prerogative of the State ('public function test'); or (3) the State had so far insinuated

itself into a position of interdependence with the [private parties] that it was a joint

participant in the enterprise ('nexus/joint action test')."  <u>Rayburn ex rel. Rayburn v.</u>

<u>Hogue</u>, 241 F.3d 1341, 1347 (11th Cir. 2001) (citations and internal quotation marks

omitted).  To satisfy this third test, the private party must be "intertwined in a

symbiotic relationship" with the government.  *See* <u>Focus on Family v. Pinellas Suncoast Transit Auth.</u>, 344 F.3d 1263, 1278 (11th Cir. 2003).

Here, Brown apparently relies upon the fact that Attorneys Seagle and Adkins, who are private attorneys, provided legal services to Nurse White, who is a "state actor" for purposes of § 1983 (i.e., she is employed by a private contractor that provides health care to FDOC inmates).

It is unlikely that a private attorney's providing legal services to a state actor meets the requirements of any of the three tests articulated in <u>Rayburn</u>, *supra*.  *See* <u>Dyer v. Md. State Bd. of Educ.</u>, — F. Supp. 3d —, 2016 WL 2939740, at *10 (D. Md. May 20, 2016) (county board's law firm and attorney were not "state actors" by virtue of their role in proceedings removing member from office, and thus were not subject to liability under § 1983); <u>Aldrich v. Ruano</u>, 952 F. Supp. 2d 295, 301 (D. Mass. 2013) (attorney who represented government defendants in prior suit by plaintiff was not state actor), *aff'd*, 554 F. App'x 28 (1st Cir. 2014) (per curiam); <u>Horen v. Bd. of Educ.</u>, 594 F. Supp. 2d 833, 841 (N.D. Ohio 2009) (rejecting plaintiffs' attempt to impute § 1983 liability to attorneys whose sole connection to state government was their provision of legal services to public school system).[1]

---

[1] The Court is aware that in <u>Filarsky v. Delia</u>, — U.S. —, 132 S. Ct. 1657, 182 L. Ed. 2d 662 (2012), the Supreme Court implicitly accepted that a private attorney could be amenable to a § 1983 claim.  But in <u>Filarsky</u>, the attorney was hired by a municipality to conduct an investigatory

However, even if Attorneys Seagle and Adkins could be deemed to have engaged in conduct "fairly attributable to the state," and thus sued as state actors under § 1983, Brown's claims against them are subject to dismissal for the reasons discussed *supra*.

###   C.   Amendment of Brown's Complaint Would be Futile

"Ordinarily, a party must be given at least one opportunity to amend before the district court dismisses the complaint." Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005).  However, "[a] district court need not . . . allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001).

Amendment would be futile in this instance, because the facts as alleged in the complaint, viewed in a light most favorable to Brown, could not be stated in any fashion so as to show that he is entitled to relief.  Therefore, the court may dismiss this case without providing opportunity for amendment.

---

interview of a city employee suspected of misconduct.  During the course of that interview, the attorney ordered the employee to produce certain materials for inspection.  These are not the typical duties of retained counsel: the Filarsky attorney could only interrogate and issue orders to the employee because he was clothed with state power.  It is also worth noting that the Filarsky Court deemed the attorney eligible for qualified immunity.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

1.      That Plaintiff's complaint be **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

2.      The clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida, this 29th day of July 2016.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**